**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ERIC BROYLES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. _____ |
| v. | ) |
| | ) JURY TRIAL DEMANDED |
| CELLULAR BIOMEDICINE GROUP, INC., | ) |
| BIZUO (TONY) LIU, TERRY A. | ) |
| BELMONT, WEN TAO (STEVE) LIU, | ) |
| EDWARD SCHAFER, HANSHENG ZHOU, | ) |
| CHUN KWOK ALAN AU, GANG JI, and | ) |
| DARREN O'BRIEN, | ) |
| | ) |
| Defendants. | ) |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon

personal knowledge with respect to himself, and upon information and belief based upon, *inter*

*alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1.      This action stems from a proposed transaction announced on August 12, 2020 (the

"Proposed Transaction"), pursuant to which Cellular Biomedicine Group, Inc. ("Cellular

Biomedicine" or the "Company") will be taken private by entities formed by a consortium

including Bizuo (Tony) Liu ("Liu"), who is Chief Executive Officer ("CEO"), Chief Financial

Officer ("CFO"), and a director of Cellular Biomedicine (the "Consortium").[1]

---

[1] The Consortium is comprised of: (i) Liu and certain other members of Company management, including Yihong Yao, Li (Helen) Zhang, and Chengxiang (Chase) Dai; (ii) Dangdai International Group Co., Limited ("Dangdai"), Mission Right Limited ("Mission"), Wealth Map Holdings Limited, Earls Mill Limited, OPEA SRL, Maplebrook Limited, Full Moon Resources Limited, Viktor Pan, and Zheng Zhou; and (iii) Yunfeng Fund III, L.P., TF Capital Fund III L.P., and Velvet Investment Pte. Ltd.

2.      On August 11, 2020, Cellular Biomedicine's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with CBMG Holdings ("Parent") and CBMG Merger Sub Inc. ("Merger Sub"). Pursuant to the terms of the Merger Agreement, Cellular Biomedicine's stockholders will receive $19.75 in cash for each share of Cellular Biomedicine common stock they own.

3.      On December 8, 2020, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission (the "SEC") in connection with the Proposed Transaction.

4.      The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6.      This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391(b) because a portion of the transactions and wrongs complained of herein occurred in this District.

**PARTIES**

8.      Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Cellular Biomedicine common stock.

9.      Defendant Cellular Biomedicine is a Delaware corporation and a party to the Merger Agreement.  Cellular Biomedicine's common stock is traded on the NASDAQ, which is headquartered in New York, New York, under the ticker symbol "CBMG."

10.     Defendant Liu is CEO, CFO, and a director of the Company.  Liu is a member of the Consortium.

11.     Defendant Terry A. Belmont ("Belmont") is Chairman of the Board of the Company.  Belmont is a member of the special committee of the Board (the "Special Committee").

12.     Defendant Wen Tao (Steve) Liu ("W. Liu") is a director of the Company.  W. Liu is a member of the Special Committee.

13.     Defendant Edward Schafer ("Schafer") is a director of the Company.  Schafer is a member of the Special Committee.

14.     Defendant Hansheng Zhou ("Zhou") is a director of the Company.  According to the Proxy Statement, Zhou is "affiliated with Dangdai."  Specifically, Zhou "currently serves as Chief Executive Officer and Chairman of Wuhan Dangdai Science & Technology Industries Group Co., Ltd."

15.     Defendant Chun Kwok Alan Au ("Au") is a director of the Company.  Au is a member of the Special Committee.

16.     Defendant Gang Ji ("Ji") is a director of the Company.

17.     Defendant Darren O'Brien ("O'Brien") is a director of the Company.  According to the Proxy Statement, "[s]ince May 2013 to the present, Mr. O'Brien has worked at Sailing

Capital, a global private equity firm based in Hong Kong and is a Managing Director & Partner."

Sailing Capital is a rollover stockholder in connection with the Proposed Transaction.

18.     The defendants identified in paragraphs 10 through 17 are collectively referred to herein as the "Individual Defendants."

**SUBSTANTIVE ALLEGATIONS**

*Background of the Company and the Proposed Transaction*

19.     Cellular Biomedicine develops proprietary cell therapies for the treatment of cancer and degenerative diseases.

20.     The Company conducts immuno-oncology and stem cell clinical trials in China using products from its integrated GMP laboratory.

21.     The Company's GMP facilities in China, consisting of twelve independent cell production lines, are designed and managed according to both China and U.S. GMP standards.

22.     The Company's Shanghai facility includes a "Joint Laboratory of Cell Therapy" with GE Healthcare and a "Joint Cell Therapy Technology Innovation and Application Center" with Thermo Fisher Scientific.  These partnerships focus on improving manufacturing processes for cell therapies.

23.     The Company currently has ongoing CAR-T Phase I clinical trials in China.  The China NMPA approved the Company's IND application for a Phase II trial for AlloJoin®, CBMG's "Off-the-Shelf" allogenic haMPC therapy for the treatment of Knee Osteoarthritis ("KOA"), and has accepted the Company's IND application for a Phase II trial for ReJoin® autologous haMPC therapy for the treatment of KOA.  The NMPA has also accepted the Company's dossier for an IND application for clinical trials of anti-BCMA CAR-T.

24.    On August 11, 2020, Cellular Biomedicine's Board caused the Company to enter into the Merger Agreement.

25.    Pursuant to the terms of the Merger Agreement, Cellular Biomedicine's stockholders will receive $19.75 in cash for each share of Cellular Biomedicine common stock they own.

26.    According to the press release announcing the Proposed Transaction:

Cellular Biomedicine Group, Inc. (Nasdaq: CBMG) ("Company," "CBMG," "we" or "our"), a biopharmaceutical firm engaged in the drug development of immunotherapies for cancer and stem cell therapies for degenerative diseases, announced today that it has signed a definitive merger agreement to be acquired by a newly-formed entity ("Parent") formed on behalf of a consortium consisting of (i) Bizuo (Tony) Liu (CEO of CBMG) and certain other members of CBMG management (Yihong Yao, Li (Helen) Zhang and Chengxiang (Chase) Dai) (collectively, the "Management Rollover Stockholders"), (ii) Dangdai International Group Co., Limited, Mission Right Limited, Wealth Map Holdings Limited, Earls Mill Limited, OPEA SRL, Maplebrook Limited, Full Moon Resources Limited, Viktor Pan and Zheng Zhou (together with the Management Rollover Stockholders, the "Consortium Rollover Stockholders") and (iii) Yunfeng Fund III, L.P., TF Capital Fund III L.P., Velvet Investment Pte. Ltd., and Bizuo (Tony) Liu (the "Equity Investors").

Under the terms of the merger agreement, CBMG's stockholders will receive US$19.75 in cash for each outstanding share of common stock held immediately prior to the effective time of the merger, other than (i) the shares owned by Parent or its subsidiaries, (ii) the shares held by CBMG as treasury stock, (iii) certain shares held by rollover stockholders, including the Consortium Rollover Stockholders (collectively, the "Rollover Stockholders") and (iv) the shares in respect of which appraisal rights have been properly and validly exercised under Delaware law. In connection with the Merger, the shares held by the Rollover Stockholders will be cancelled without payment of any consideration and the Rollover Stockholders will subscribe for newly-issued shares of Parent. The Rollover Stockholders collectively hold approximately 51.5% of the outstanding CBMG shares. . . .

Upon closing of the merger, CBMG will become a wholly owned subsidiary of Parent. CBMG is expected to remain headquartered in Maryland. The merger is subject to approval by CBMG's stockholders, including a non-waivable condition requiring approval by the holders of a majority of the outstanding shares of CBMG common stock that are not beneficially owned by Parent, the Rollover Stockholders, the Equity Investors or their respective affiliates, as well as

5

regulatory and certain other customary closing conditions. The merger is not subject to a financing condition. The Company will call a meeting of stockholders for the purpose of voting on the adoption of the merger agreement in due course. If completed, the merger will result in the Company becoming a privately held company, and CBMG's common stock would no longer be listed on the NASDAQ Capital Market.

Jefferies LLC is serving as sole financial advisor to the Special Committee, and White & Case LLP is serving as legal counsel to the Special Committee. O'Melveny & Myers LLP is serving as U.S. legal counsel to Parent.

### *The Proxy Statement Omits Material Information, Rendering It False and Misleading*

27.     Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

28.     As set forth below, the Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

29.     The Proxy Statement provides that, on July 9, 2019, Individual Defendant "Liu sought the Board's authorization to engage an investment bank" and "the Board authorized management to identify and engage an investment bank to evaluate certain business opportunities." The Proxy Statement fails to disclose: (i) the reasons the Board provided such authorization to Liu; (ii) whether Liu engaged an investment bank; (iii) if so, the identity of the investment bank; and (iv) the terms of the investment bank's engagement, including the amount of compensation the investment bank has received or will receive in connection with its engagement, whether the investment bank has performed past services for any parties to the Merger Agreement or their affiliates, the timing and nature of such services, and the amount of compensation received by the investment bank for providing such services.

30.     The Proxy Statement fails to disclose the terms of the consortium agreement executed on November 9, 2019 (the "Consortium Agreement"), "including the per share merger

consideration to be offered in connection with a non-binding proposal to acquire all outstanding shares of Common Stock not already owned by" the parties to the Consortium Agreement.

31.     The Proxy Statement fails to disclose the nature of all discussions between Individual Defendant Liu, on the one hand, and Hillhouse Bio Holdings, L.P. ("HBH"), TF Capital, Dangdai, and Mission, on the other hand, prior to the execution of the Consortium Agreement, including the nature of the discussions held: (i) with HBH on September 12, 2019 "regarding the Company's clinical program and liquidity and cash flow positions"; (ii) with HBH during late September 2019 and early October 2019 "to discuss the possibility of a potential transaction involving the Company and HBH"; (iii) with HBH and TF Capital during October 2019 regarding a "potential transaction"; (iv) with HBH after the October 12, 2019 Board meeting regarding "the idea of pursuing a 'going private transaction'"; (v) with HBH and TF Capital between November 2 and November 9, 2019 "to explore structures for a potential 'going private transaction'"; (vi) with Dangdai during the same period regarding a potential "going private transaction"; and (vii) with Mission on November 5, 2019 regarding "the possibility of 'a going private transaction.'"

32.     The Proxy Statement provides that "certain stockholders of the Company, consisting of Viktor Pan, Zheng Zhou, Wealth Map Holdings Limited ("Wealth Map"), Earls Mill Limited ("Earls Mill"), OPEA SRL, Maplebrook Limited ("Maplebrook") and Full Moon Resources Limited ("Full Moon"), each communicated with Mr. Liu to inquire about the proposed transaction." However, the Proxy Statement fails to disclose the nature of such communications, and the reasons Individual Defendant Liu was permitted to have such communications as opposed to the Special Committee.

33.     The Proxy Statement fails to disclose the reasons Individual Defendant Liu was permitted to discuss the potential transaction with Novartis on November 12, 2019, apparently without the approval or involvement of the Special Committee.

34.     The Proxy Statement fails to disclose the nature of the "relationships of Jefferies with affiliates of HBH," as discussed at the November 26, 2019 Special Committee meeting and thereafter, as well as the amount of compensation received or to be received by Jefferies in connection with such relationships.

35.     The Proxy Statement fails to disclose the nature of the responses of "the remaining parties" to Jefferies' "additional outreach" between March 3, 2020 and August 11, 2020, as well as the nature of the parties' responses during the go-shop period.

36.     The Proxy Statement fails to disclose the reasons Individual Defendant Ji was not appointed to the Special Committee, including whether he faced any potential or actual conflicts of interest in connection with the Proposed Transaction.

37.     The Proxy Statement fails to disclose the "March Management Forecasts" and the underlying assumptions, including the "assumptions with respect to the probability of success of certain products under development."

38.     The Proxy Statement fails to disclose the reasons the Special Committee determined to lower its counterproposal from $22.00 per share (as submitted on March 25, 2020), which was based on the March Management Forecasts, to $19.50 per share (as submitted only ten days later on April 4, 2020), due to purported "COVID-19 pandemic [] impact on the Company's operations" but apparently without the Special Committee receiving or reviewing any updated financial projections or analyses.

39.     The Proxy Statement fails to disclose the nature of the Special Committee's discussions on June 11, 2020 regarding "recent clinical results relating to one of the Company's products and the potential impact of such results on the Company."

40.     The Proxy Statement fails to disclose the nature of Individual Defendant Liu's discussion of "the Company's projected cash flows for the remainder of calendar year 2020" at the July 12, 2020 Board meeting.

41.     With respect to the "July Management Forecasts," the Proxy Statement fails to disclose: (i) all line items used to calculate EBIT, EBITDA, NOPBT, and NOPAT; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

42.     The omission of the above-referenced material information renders the Proxy Statement false and misleading.

43.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Cellular Biomedicine

44.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

45.     The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  Cellular Biomedicine is liable as the issuer of these statements.

46.     The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants

were aware of this information and their duty to disclose this information in the Proxy Statement.

47.     The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

48.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

49.     The Proxy Statement is an essential link in causing plaintiff to approve the Proposed Transaction.

50.     By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

51.     Because of the false and misleading statements in the Proxy Statement, plaintiff is threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants

52.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

53.     The Individual Defendants acted as controlling persons of Cellular Biomedicine within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of Cellular Biomedicine and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the

various statements that plaintiff contends are false and misleading.

54.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

55.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Proxy Statement.

56.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

57.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.  As a direct and proximate result of defendants' conduct, plaintiff is threatened with irreparable harm.

## **PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

11

B.       In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.       Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.       Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.       Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.       Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated:  December 15, 2020                            **RIGRODSKY & LONG, P.A.**

By:   */s/ Timothy J. MacFall*
        Seth D. Rigrodsky
        Timothy J. MacFall
        Gina M. Serra
        825 East Gate Boulevard, Suite 300
        Garden City, NY 11530
        Telephone: (516) 683-3516
        Email: sdr@rl-legal.com
        Email: tjm@rl-legal.com
        Email: gms@rl-legal.com

        *Attorneys for Plaintiff*